UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MONA L. JIMENEZ,

                Plaintiff,

    v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 14-cv-05959 JRC

ORDER ON PLAINTIFF'S COMPLAINT

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 16, 19, 20).

    After considering and reviewing the record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's finding that Dr. Erica Esselstrom, M.D.'s opinion was based in large part on plaintiff's subjective allegations and

examination results under her control, and that this finding is a specific and legitimate reason to discount the opinion Also, the ALJ provided clear and convincing reasons for his decision not to credit fully plaintiff's credibility. Therefore, the ALJ's finding of a lack of objective medical evidence to support Dr. Esselstrom's opinion is a finding based on substantial evidence in the record as a whole. The ALJ reasonably resolved the conflicting medical opinions regarding plaintiff's functional ability.

Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, MONA L. JIMENEZ, was born in 1966 and was 42 years old on the alleged date of disability onset of March 6, 2009 (*see* AR. 261-66, 267-73). Plaintiff completed high school and some college (AR. 56). Plaintiff has worked as a patient advocate, postal worker and doing temporary labor (AR. 329).

According to the ALJ, plaintiff has at least the severe impairments of "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; carpal tunnel syndrome; fibromyalgia syndrome; [and] degenerative joint disease of the right shoulder (20 CFR 404.1520(c) and 416.920(c))" (AR. 17).

At the time of the hearing, plaintiff was living in her home with a roommate and raising her five-year-old grandson (AR. 46-48).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 119-27, 128-36, 139-49, 150-60). Plaintiff's requested hearing was held before Administrative Law Judge Michael Gilbert ("the ALJ") on October 18, 2012 (*see* AR. 40-116). On May 7, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 9-38).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in rejecting the medical opinions of Erica Esselstrom, M.D.; and (2) Whether or not the ALJ's errors were harmless (*see* Dkt. 16, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**Whether or not the ALJ erred in rejecting the medical opinions of Erica Esselstrom, M.D**.

Plaintiff's only argument is that the ALJ committed harmful error when rejecting the opinion of Dr. Erica Esselstrom, M.D. (*see* Dkt. 16, pp. 2-5). Defendant contends that the ALJ committed no error, and that the ALJ reasonably evaluated this opinion (*see* Dkt. 19, pp. 2-5).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether or not "certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). That is what the ALJ did here.

Dr. Erica Esselstrom, M.D. examined plaintiff multiple times and provided a relevant medical opinion on May 13, 2012 (*see* AR. 415-20). Dr. Esselstrom opined that plaintiff could not do any lifting, could not walk long distances, could not stand without a walker and that her legs will go numb with sitting (*see* AR. 417). She opined that plaintiff was "severely limited," indicating that plaintiff is "unable to lift at least 2 pounds or unable to stand and/or walk" (*see id.*). Dr. Esselstrom indicated that abnormal examination findings that supported her opinion included plaintiff's decreased range of motion in her lumbar spine, tenderness and pain over diffuse lumbar/sacral spine, decreased strength in plaintiff's lower extremities and that plaintiff walked with a walker (*see* AR. 416).

One of the reasons provided by the ALJ for his failure to credit fully Dr. Esselstrom's opinion was that "Dr. Esselstrom's opinion that the claimant was unable to perform postural activities is based on the claimant's subjective complaints, rather than the objective medical evidence" (AR. 27). The Court notes that abnormal findings cited by Dr. Esselstrom, including plaintiff's decreased range of motion in her lumbar spine, tenderness and pain over diffuse lumbar/sacral spine, decreased strength in plaintiff's lower extremities and that plaintiff walked with a walker, are results within plaintiff's control (*see* AR. 416). Although these types of findings generally are considered objective findings, they often are confirmed by tests that are more difficult for a patient to control, or tests that a patient may not know how to fake, such as the Romberg test. Here, plaintiff's Romberg test was negative, indicating a normal finding with respect to balance and proprioception (*see id.*). In addition, plaintiff's straight leg test (SLR) also was

negative (*see id.*). Therefore, in this particular instance, the Court concludes that substantial evidence in the record as a whole supports the ALJ's finding that Dr. Esselstrom's opinion was based largely on plaintiff's subjective statements or actions.

Although not challenged by plaintiff, the Court also concludes that the ALJ's failure to credit fully plaintiff's credibility is supported by clear and convincing reasons. For example, the ALJ notes that on "October 11, 2012, the Cooperative Disability Investigations Unit (CDIU) of the Social Security Administration submitted its investigative findings of the claimant" (AR. 23 (*citing* AR. 319)). As noted by the ALJ, although plaintiff testified that she could not walk without a walker, the CDIU "met with witnesses who reported that the claimant ambulated without a walker except when she was being picked up by medical transport van" (*see id.* (*citing* AR. 321)). Similarly, although plaintiff testified that she last drove a car in 2009, two witnesses reported that they observed plaintiff often driving a red car (*see id.* (*citing* AR. 325)). Therefore, the Court concludes that the ALJ's finding that "the CDIU findings demonstrate that the claimant knowingly and willfully lied at the hearing" is a finding based on substantial evidence in the record as a whole (*see* AR. 24). As noted by the ALJ:

> Specifically, the claimant testified under oath that she was unable to drive, was unable to ambulate without a walker, was unable to navigate the staircase at her home, and that her bedroom was in the upstairs portion of her home. Differently, the CDIU investigation revealed that the claimant was able to drive on a daily basis, was able to ambulate without a walker, and was able to navigate the staircase in her home to move between her bedroom and the upstairs.

(AR. 24).

The ALJ provided another reason for failing to credit fully the opinion of Dr. Esselstrom (AR. 27). The ALJ found a lack of objective medical evidence to support the finding by Dr. Esselstrom that plaintiff is unable to engage in postural activities (*see id.*). Although plaintiff cites some objective evidence that could support a finding of postural limitations, the ALJ noted opinions from multiple doctors that there was no objective medical evidence to support plaintiff's alleged limitations. For example, the ALJ noted that on April 7, 2009, "Dr. Peter Brown, M. D. wrote that the claimant's pain symptoms seemed out of proportion to the objective evidence showing midline and right-sided disc bulge at L4-5" (AR. 20-21 (*citing* AR. 386)). Likewise, the ALJ noted that after Dr. Brown performed surgery, during a follow-up appointment, Dr. Brown noted that plaintiff again "appeared to be having pain out of proportion to the MRI findings" (*see* AR. 21 (*citing* AR. 395)). The ALJ also noted that subsequently, on April 20, 2010, Dr. Brown again indicated that he had "reviewed both of her MRIs from May and December 2009, and neither of these show any signs of a surgical lesion, or anything to explain her current symptoms" (AR. 412).

As noted by the ALJ, even Dr. Esselstrom noted on July 21, 2010 that she had discussed plaintiff's MRI findings with plaintiff, and found that there were "no findings to explain her leg weakness or urinary incontinence" (AR. 503; *see also* AR. 21). Additionally, as noted by the ALJ, on November 4, 2011, Dr. Melanie Berg, M.D. "continued to treat the claimant for her alleged leg symptoms, but remained unable to identify any objective medical evidence supporting the claimant's complaint" (AR. 22 (*citing* AR. 628)). The ALJ also noted that on September 16, 2012, Dr. Aaron Bunnell,

ORDER ON PLAINTIFF'S COMPLAINT - 7

M. D., examined plaintiff and "wrote that the claimant had greater strength than her physical examination results showed" (AR. 23 (*citing* AR. 667)). The ALJ also indicated that "[n]otably, Dr. Bunnell found no focal deficits or objective medical evidence to support the claimant's allegations" (*id.* (*citing* AR. 670)). The Court notes that Dr. Bunnell indicated that when he looked "at reflexes, lack of objective atrophy, and functional testing, [he did] not see any focal deficits" (AR. 670).

Based on a review of the record, the Court concludes that the ALJ's findings regarding multiple doctors' opinions of a lack of objective evidence to support plaintiff's allegations are findings based on substantial evidence in the record as a whole and reflect an accurate account of plaintiff's medical records. The ALJ's finding that there is a lack of objective medical evidence to support the opinion from Dr. Esselstrom regarding postural limitations appears to be based on a conflict with opinions from multiple other doctors and based on the record as a whole.

The ALJ is responsible for resolving ambiguities and conflicts in the medical evidence. *Reddick*, *supra,* 157 F.3d at 722 (*citing Andrews*, *supra,* 53 F.3d at 1039). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony lies with the ALJ. *Sample*, *supra,* 694 F.2d at 642 (*quoting Waters*, *supra,* 452 F.2d at 858 n.7 (*citing Calhoun*, *supra,* 626 F.2d at 150)). For these reasons, and based on a review of the record as a whole, the Court concludes that the ALJ's reasoning regarding a lack of objective medical evidence to support Dr. Esselstrom's opinion of postural limitations is based on substantial evidence in the record as a whole.

As noted, the ALJ can provide specific and legitimate reasons based on substantial evidence in the record as a whole for a failure to adopt limitations from a contradicted doctor's opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, *supra,* 157 F.3d at 725 (*citing Magallanes*, *supra,* 881 F.2d at 751). The Court concludes that the ALJ met this standard here with respect to the opinion of Dr. Esselstrom.

## CONCLUSION

The ALJ reasonably resolved the conflicts in the medical evidence and provided specific and legitimate reasons supported by substantial evidence in the record as a whole for his failure to credit fully the opinion of Dr. Esselstrom.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 16th day of July, 2015.

J. Richard Creatura
United States Magistrate Judge